# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| SIERRA F., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. ED CV 20-00764-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I.   INTRODUCTION

In 2016, Sierra F. ("Plaintiff") applied for Supplemental Security Income, alleging disability beginning April 1, 2009. See Dkt. 16, Administrative Record ("AR") 222-31.[1] After the claim was denied initially and on reconsideration, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). See AR 52-104.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ denied Plaintiff's claim by written decision on May 1, 2019. See AR 35-47. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. See AR 37. At step two, the ALJ determined that Plaintiff had the severe impairments of "fibromyalgia; obesity; lumbar strain; anxiety; major depression; and marijuana use and abuse." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 37-40.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with various limitations, including only occasional interaction with coworkers and supervisors and no contact with the general public. See AR 40-45. At step four, the ALJ found that Plaintiff had no past relevant work. See AR 45. At step five, the ALJ relied on the testimony of a vocational expert to conclude that someone with Plaintiff's RFC could perform jobs that exist in the national economy, including kitchen helper (Dictionary of Occupational Titles or "DOT" 318.687-010), floor waxer (DOT 381.687-034), and day worker (DOT 301.687-014). See AR 45-46. Accordingly, the ALJ denied benefits. See AR 46-47.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331

F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

### III. DISCUSSION

The parties dispute whether the ALJ (1) fully and fairly developed the record and (2) provided clear and convincing reasons to reject Plaintiff's subjective symptom testimony. See Dkt. 17, Joint Stipulation ("JS") at 4.[2] For the reasons discussed below, the Court concludes that the ALJ erred in discounting Plaintiff's testimony. Because the Court concludes that this issue warrants remand, the Court will not consider whether Plaintiff's remaining claims of error would independently warrant relief. Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

At the time of the hearing in 2019, Plaintiff testified that she was 23 years old and could not work due to various physical and mental impairments. See AR 56-57. She told the ALJ that she had stopped working due to her fibromyalgia, arthritis, and anxiety, among other things. See AR 57-58. She told the ALJ that she experiences pain every day, which she rated as a five or six out of ten, even with medication. See AR 61. She said she was diagnosed as

---

[2] As part of the first argument, Plaintiff also suggests that the ALJ improperly discounted the opinions of her treating physicians. See JS at 16.

bipolar Type II at the age of twelve and experiences symptoms of anxiety and severe depression. See AR 63. There have been weeks where Plaintiff "thought about suicide all day." Id. Plaintiff has been hospitalized three times for mental health issues, most recently in early 2018. See AR 64-65. She spends most of the day in bed and does not do anything for fun outside of the house. See AR 59-60. Plaintiff can do the dishes, feed the dog, and shower, but she does not go out in public because it exacerbates her anxiety. See AR 65-66. Plaintiff frequently isolates herself even though she knows her family is there to support her. See AR 66.

The ALJ applies a two-step analysis to assess a claimant's credibility for symptom severity. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). Once the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," then, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. This standard is "the most demanding required in Social Security cases." Id.

Here, the ALJ discredited Plaintiff's testimony for three reasons. See AR 41-42. First, the ALJ found that Plaintiff's "statements regarding the alleged intensity, persistence, and limiting effects of symptoms" were "inconsistent with existing statements" she made "under other circumstances." AR 41. Specifically, the ALJ referenced inconsistencies regarding Plaintiff's testimony that she had poor focus and concentration, and that she suffered from debilitating pain. See id.

As the Commissioner appears to concede, this finding is not supported by substantial evidence. See JS at 26 ("[T]he Commissioner concedes that the ALJ's other reasons regarding inconsistent statements . . . do not accurately reflect the relevant reports in the record."). For example, at the hearing,

4

Plaintiff testified that she had never pursued a non-customer-service job because she had "a hard time concentrating. I have what they would call fibro fog, I have a hard time focusing on a task for a long period of time." AR 58. The ALJ contrasted that testimony with Plaintiff's statement to Dr. Catherine Stinnett in June 2015 that it "may look like she has poor focus but gets her work done." AR 527. But in the same visit with Dr. Stinnett, Plaintiff reported an episode in which she had difficulty speaking accompanied by "anxiety, dizziness, poor concentration, and overall difficulty performing her job duties at Jamba Juice." Id. Plaintiff also told Dr. Stinnett that she had been told at work that her performance was "less than expected" and that she "works too slow." Id. Plaintiff's stray statement to a doctor that she "gets her work done" is not a clear and convincing reason to discount her testimony, especially given that her other statements during the same visit indicate that she was having issues at work because she worked too slowly.

  The ALJ also reasoned that Plaintiff's complaints of depression, anxiety, and irritability were inconsistent with her "failure to follow prescribed treatment that might improve symptoms." AR 41. An ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). However, a person suffering from a mental illness may not realize that she needs treatment or that her "condition reflects a potentially serious mental illness." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

  The ALJ explained that "medical records from October 8, 2018, reveal that the claimant discontinued her medication when her insurance lapsed." AR 41 (citing AR 832). The Commissioner concedes that Plaintiff's two-week medication hiatus due to a lapse in health insurance is not a clear and convincing reason to discredit her symptom testimony. See JS at 26-27; see

also Smolen, 80 F.3d 1273 at 1284 (finding claimant's failure to seek treatment "is not a clear and convincing reason to discredit her symptom testimony" because she "had no insurance and could not afford treatment"); Trevizo, 871 F.3d at 680-81 (finding error where nothing in the record contradicted claimant's testimony that she was at times noncompliant with medication because she could not afford it).

The ALJ also noted that Plaintiff was "directed to attend group therapy to help with depression but stopped attending those sessions," citing to a progress note from July 12, 2017. See AR 41 (citing AR 892). But the full progress note tells a more complete story:

> [Plaintiff's] most recent outpatient contact with Corona Clinic was on 04/03/17 where she attended her regularly scheduled TAYA Group. During that group session, patient reported that her symptoms have worsened. For the next month patient did not show for group. Patient states she was feeling too anxious at group and from 05/05/17 to present, patient's contacts with outpatient treatment have been telephonic. Patient states she spoke with Catherine Stinnett, MD on 05/24/17 and on 05/25/17. Patient informed Dr. Stinnett that for the past two weeks she was feeling more depressed with suicidal ideations; no plan, or intent. On 06/06/17 patient participated in a TAV appointment with Dr. Stinnett to address medication management. According to the record, patient had a negative side affect with Wellbutrin SR, had a panic attack and was seen in the ED. From 06/18/17 to 06/26/17 patient and Dr. Stinnett would speak primarily through email.
>
> Per mother, patient has been texting her everyday stating that she is going to overdose on medication or jump off a high

6

> building. Patient also asked mother for all of her medication
> yesterday. Per mother, patient has been resistant to treatment in
> the past and she is unsure if any type of outpatient treatment
> would help patient at this point. Patient was offered to attend
> group treatment, individual case management, and a medication
> appointment with her Psychiatrist tomorrow. Patient stated that
> she did not feel any of those people cared about her and that they
> were all just being paid to talk to her; patient said this quietly
> under her breath and was difficult to hear what she was saying.
> Patient then stated she deserved all this and then stopped
> answering all questions. . . . Patient became angry and hysterical
> after being told she was going to be placed on a 5150. She told her
> mother that this is why she wanted to kill herself, to stop being
> such a burden. Patient became resistant to get on gurney to ED.

AR 892. In sum, Plaintiff stopped attending group therapy because it heightened her anxiety during a period of worsened symptoms, including suicidal ideations that resulted in her involuntarily hospitalization. The ALJ's decision, however, does not reflect that these explanations for Plaintiff's lack of treatment were considered. This runs afoul of the Ninth Circuit's guidance in this area. See Nguyen, 100 F.3d at 1465 ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). As a result, Plaintiff's failure to follow prescribed treatment was not a clear and convincing reason to discount her testimony.

Finally, the ALJ found that the objective medical evidence did not support, and was inconsistent with, the level of symptomology that Plaintiff alleged in connection with her depression and anxiety. See AR 41-42. In support, the ALJ cited to progress notes from May and June 2016, when Plaintiff changed medications to Cymbalta and reported "doing fair," "doing

better," and having a satisfactory performance at school or work. See AR 42 (citing AR 801, 807). But while the ALJ focused on a short two-month period to discount Plaintiff's statements, her testimony aligned with the overall diagnostic record. See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (explaining that treatment notes showing some signs of improvement do not negate the claimant's testimony when the record is viewed as a whole); Miller v. Berryhill, 730 F. App'x 526, 527 (9th Cir. 2018) (reaffirming that ALJ may not rely on "cherry-picked portions of the medical records" to disregard testimony). Indeed, Plaintiff was involuntarily hospitalized in March and July of 2017, and while she showed some improvement on Cymbalta, she reported by October 2018 that she was "declining," with her mother reporting that she was "angry all the time." AR 832. Rather than showing consistent improvement, Plaintiff's mental health symptoms waxed and waned during treatment. In the context of mental health, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (finding error where ALJ concluded that "a few short-lived periods of temporary improvement" undermined claimant's testimony). Plus, even were the Court to credit this finding, the Commissioner concedes that it could not be the ALJ's sole reason for rejecting Plaintiff's statements. See JS at 23-24 (citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)).

  In sum, the ALJ did not offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding her impairments. The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the district court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's

decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). Here, the Court finds that remand is the appropriate remedy to allow the ALJ to reconsider the opinion of Plaintiff's subjective symptom testimony. The ALJ may also conduct such other proceedings as are warranted.

## IV. CONCLUSION

The decision is the Social Security Commission is REVERSED and this case is REMANDED.

IT IS SO ORDERED.

Date: June 28, 2021

DOUGLAS F. McCORMICK
United States Magistrate Judge